# UNITED SHOE MACHINERY COMPANY, Appellant, v. ANNIE M. RAMLOSE, Executrix.

In Banc, December 17, 1910.

1. **SECOND APPEAL:** **Re-examination of Issues:** **Res Adjudicata.** Where upon the former appeal the judgment was reversed and remanded with directions, and on a rehearing the plaintiff timely interposed a Federal question to a peremptory instruction to find for defendant, and that was plaintiff's first opportunity to do so, a finding for defendant in accordance with the directions on the former appeal is not *res adjudicata*, and the Supreme Court is not restricted to an affirmance of the judgment, but will re-examine the questions presented.

2. **FOREIGN CORPORATION:** **Doing Business Without License:** **Due Process of Law, Etc.** Where a lease of machines made by a foreign corporation to a citizen of this State is void, as was held on the former appeal in this case, because the lessor had not complied with the laws of this State authorizing it to do business here, it can enter the courts of this State to recover its machines just as if no such lease had ever been made; and therefore, the statute, denying to the lessor the right to sue on the lease contract in this State, does not deny it the equal protection of the laws or due process of law, and no such Federal question is involved in a suit to recover the machines placed in defendant's possession under the void lease.

3. ———: ———: **Recovery of Machines Leased:** **Validating Void Contract.** Notwithstanding the lease in pursuance to which the machines passed into the defendant's possession was void, because the lessor, being a foreign corporation, had not complied with the laws of this State authorizing it to do business here, the courts will not leave the property where the parties have themselves placed it, but will permit the lessor to replevy the machines or to maintain trover for their value; and thereby the court does not indirectly avoid the statute and give practical validity to the lease or contract. Relief is never denied on such a ground unless the maintenance of the suit would necessarily result in giving force and effect to the void contract, or unless the contract itself is tainted with fraud or immorality.

4. ———: ———: **Suing in This State.** The statute does not deny to a foreign corporation the right to maintain a suit for the recovery of its property in this State, and if it did it would be of doubtful validity; it simply denies to such company the right to do business in this State.

*Held*, by GRAVES, J., dissenting, that the effect of the majority opinion is to permit the doing of a thing by indirection that cannot be done by direct act; if the contract by which the foreign corporation sells goods to a citizen of this State is void because it has not complied with the laws of this State permitting it to do business here, then under the majority opinion, such corporation may ignore the void contract, and sue the vendee for the value of the goods by way of an action of conversion, which would in effect be to nullify the statute. The statute ought to be so construed as to close the doors of our courts to foreign corporations until such time as they comply with our laws; and the State has the constitutional right to do that.

5. ———: ———: **Void Lease: Replevin: Damages.** Where the lease under which defendant acquired possession of the machines is absolutely void, the lessor may recover them by replevin, and defendant is not entitled to damages for the taking and detention of the machines from him.

6. ———: ———: ———: ———: ———: **Letters-Patent.** Where the machines were covered by letters-patent, and the only authority by which defendant claims the right to use them is a void lease, and they are taken out of his possession by replevin, then defendant had no right to use them, and cannot recover damages for the taking and retention of them, for no one has any right to use a patented article without a license from the patentee.

7. ———: ———: **Sale.** Where the contract by which defendant sold certain machines to plaintiff was void, and those machines were a part of the consideration therefor, plaintiff acquired no right to the machines thereunder, and if he takes them out of defendant's hands by replevin, relying only on said void contract as establishing his right to them, he must respond in damages.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J. Williams*, Judge.

REVERSED AND REMANDED.

*Robert & Robert* for plaintiff.

(1) This court overlooked completely, in the former decision of this case, the fact that the plaintiff had purchased the machines themselves, as well as the contracts under which Ramlose held them, and based

its decision on the question of the validity of the contract, ignoring entirely the title to the property. United Shoe Machinery Co. v. Ramlose, 210 Mo. 631. (2) The plaintiff in this cause had complied with all of the requirements of the laws of Missouri and therefore had the right to maintain this action. R. S. 1899, secs. 1024-5. (3) (a) The contract covering all the machines sued for in this case was made in Massachusetts. United Shoe Mchy. Co. v. Ramlose, supra; Elam v. Tel. Co., 113 Mo. App. 538; Hauck v. Sharpe, 83 Mo. App. 385; Brewing Co. v. Bobrecker, 79 Mo. App. 65; Kerwin v. Dorin, 29 Mo. App. 397; United States v. Telephone Co., 29 Fed. 17; Aultman v. Holder, 68 Fed. 467; Tayloe v. Insurance Co., 9 How. 397; Mack v. Lee, 13 R. I. 293; Glass Co. v. Taylor, 34 S. W. 711; Jameson v. Gregory, 61 Ky. 363; Milliken v. Pratt, 125 Mass. 374; Dod v. Bonafee, 6 La. Ann. 563; Insurance Co. v. Tuttle, 40 N. J. L. 476; Shelby Tube Co. v. Gun Co., 40 N. Y. Supp. 871; Galloway v. Ins. Co., 31 S. E. (W. Va.) 969; 2 Parsons, Cont., sec. 582; Lawson on Cont., sec. 32; Wharton on Conf. Laws, secs. 406-421; 3 Am. & Eng. Ency. Law, 547; Bishop on Contr., sec. 1389. (b) The fact that the machinery involved in the contract was to be used in Missouri by the defendant, has no effect upon the validity of the contract. The validity is to be determined by the *lex loci contractus,* unless it is a contract which is opposed to the public policy of Missouri. Houghtaling v. Ball, 19 Mo. 84; Houck v. Sharpe, 83 Mo. App. 391; Blevins v. Fairly, 71 Mo. App. 259; U. S. v. Telephone Co., 29 Fed. 17; Henry v. Iron Wks., 62 Pac. 904; Fitzsimmons v. Guanahain, 16 S. C. 192; In re Paige, 31 Minn. 136; Bishop on Contr., sec. 1382. (c) The validity of the contract is always determined by the *lex loci contractus.* Tri-State Co. v. Amusement Co., 192 Mo. 404; Long v. Long, 141 Mo. 352; Salee v. Chandler, 26 Mo. 124; Houghtaling v. Ball, 19 Mo. 84; Elam v. Tel. Co., 113 Mo. App. 538; Roach v. Foundry, 21 Mo. App. 118;

State ex rel. v. Carroll, 6 Mo. App. 263. (d) It can hardly be said that a contract for the leasing of machinery on a royalty basis would be opposed to the public policy of Missouri. (e) Contracts made outside of the State by corporations, if valid where made, will be enforced in this State even though the plaintiff is a corporation not licensed to do business in this State. Roeder v. Robertson, 202 Mo. 522; Sparks v. Jasper Co., 213 Mo. 242; Tri-State Co. v. Amusement Co., 192 Mo. 404; Blair v. Ins. Co., 10 Mo. 559; Blevins v. Fairly, 71 Mo. App. 259; Maxwell v. Edens, 65 Mo. App. 440; Heating Co. v. Fixture Co., 60 Mo. App. 148. (f) Mere solicitation of business and collection of money therefor is not doing business in this State, in the sense of the statute. Bank v. Leeper, 121 Mo. App. 688; Beard v. Publishing Co., 71 Ala. 60. (4) The New Jersey company was not doing business in this State. None of the cases cited in the first decision of this case (Diamond Glue Co. v. Glue Co., 187 U. S. 611; McKenna v. Surety Co., 76 Fed. 42; Terra Cotta Co. v. Poerschke, 90 N. Y. S. 333; Delaware Construction Co. v. Railroad, 204 Pa. St. 22; Bank v. Earle, 13 Pet. 519), support the holding that the making of such a contract was doing business in this State. U. S. v. Telephone Co., 29 Fed. 17; Blevins v. Fairly, 71 Mo. App. 259; Heating Co. v. Fixture Co., 60 Mo. App. 148; Maxwell v. Edens, 65 Mo. App. 440; Butler Bros. v. Rubber Co., 156 Fed. 1. (5) A corporation is a "person" within the provisions of the Fourteenth Amendment to the Constitution of the United States, which declares that no State shall "deprive any person of life, liberty or property without due process of law," nor "deny to any person within its jurisdiction the equal protection of the laws." Railroad v. Beckwith, 129 U. S. 268; Smythe v. Ames, 169 U. S. 468; Gloucester Ferry Co. v. Penna., 114 U. S. 196; Cooper Co. v. Ferguson, 113 U. S. 727; People v. Roberts, 171 U. S. 683; Turnpike Co. v. Sandford, 164 U. S. 578; U. S. v. Ex-

press Co., 164 U. S. 686; Railroad v. Ellis, 165 U. S. 150. (6) (a) Even though the leases and the contract under which the defendant obtained possession of the machinery were void, the lessor retained the title to the property, and had the right to sell the same, and the lessor itself had the right to recover the possession of the same, through an action in replevin, in this State, although the lessor, a foreign corporation, did not have a license to do business in this State. Therefore the assignee could recover. Sparks v. Jasper Co., 213 Mo. 242; Roeder v. Robertson, 202 Mo. 522; Implement Co. v. Ellis, 125 Mo. App. 697; Dunlop v. Mercer, 156 Fed. 545. (b) Ramlose paid nothing for the machines, hence there was nothing for the plaintiff to tender back. Ramlose paid royalty for the use of the machines, which use he had. (c) To hold otherwise would deprive the plaintiff of its property without due process of law, in contravention of section 1 of the Fourteenth Amendment. Roeder v. Robertson, supra; Sparks v. Jasper Co., supra; Railroad v. Nebraska, 164 U. S. 403; Fallbrock v. Bradley, 164 U. S. 112; Cole v. La Grange, 113 U. S. 1; Wilkinson v. Leland, 2 Pet. 627; Murray v. Hoboken, 18 How. 272; Loan Assn. v. Topeka, 20 Wall. 655; State v. Railroad, 36 Minn. 402. (d) And such a holding would also be a denial to the plaintiff of the equal protection of the laws of Missouri, in contravention of section 1 of the Fourteenth Amendment. Roeder v. Robertson, supra; Sparks v. Jasper Co., supra. Cases cited, supra. (e) Hence Sec. 1026, R. S. 1899, is unconstitutional in applying to contracts made outside of the State, for the reason that it deprives the plaintiff of its property without due process of law and denies it the equal protection of the law, in violation of section 1 of the Fourteenth Amendment, and also is a regulation of commerce between the States in violation of section 8 of article 1, Federal Constitution. (7) The admission of any testimony upon the question of damages, over the objection of the

plaintiff, deprived the plaintiff of its property without due process of law, and denied to the plaintiff equal protection of the law. (8) The refusal of the court to give instructions 10, 11 and 20 was a violation of section 8, article 1, Federal Constitution, in that by such refusal the circuit court of this State regulated commerce between the States, the right of such regulation belonging only to Congress. Hadley v. Glass Co., 143 Fed. 242; Addyston v. United States, 175 U. S. 211; Butler Bros. v. Rubber Co., 156 Fed. 1; Hooper v. California, 155 U. S. 648; Pembina v. Penna., 125 U. S. 181; Crutcher v. Kentucky, 141 U. S. 47; Railroad v. Simms, 191 U. S. 44; Rearick v. Penn., 203 U. S. 507; Tel. Co. v. Tel. Co., 96 U. S. 1; Gibbons v. Ogden, 9 Wheat. 189; The Lottery Cases, 188 U. S. 321; Groves v. Slaughter, 15 Pet. 505; Mobile v. Kimball, 162 U. S. 691; Cooper v. Ferguson, 113 U. S. 727; Hopkins v. U. S., 171 U. S. 597. (9) The refusal of the court to give instructions 17 and 18 was in contravention of section 4884, Revised Statutes of the United States, in that by such refusal the court permitted a recovery for the use of machines which under the evidence had been patented and could not be used by the defendant's decedent without violating said statute. U. S. R. S., sec. 4884; Hollister v. Benedict, 113 U. S. 59; United States v. Palmer, 128 U. S. 262; Postal Supply Co. v. Bruce, 194 U. S. 59. (10) (a) The defendant in replevin must in his answer claim the goods and demand a return thereof, otherwise the court cannot give a judgment in defendant's favor for the goods or the value thereof. R. S. 1899, sec. 4473; Cable v. Duke, 208 Mo. 557; Young v. Glasscock, 79 Mo. 577; Walker v. Robertson, 107 Mo. App. 575; Anthony v. Carp, 90 Mo. App. 394; Pallen v. Bogy, 78 Mo. App. 88; Chemical Co. v. Nickels, 66 Mo. App. 678; Fowler v. Carr, 55 Mo. App. 145; Clinton v. Stovall, 45 Mo. App. 642. (b) The defendant confessed in his answer that certain of the

machines sued for at the time the leases were made, were the property of the United Shoe Machinery Company of New Jersey; that the New Jersey Company sold, assigned and transferred these machines to the plaintiff; that he, the defendant, obtained possession of the said machines from the New Jersey Company, and charges in the answer that the documents by which he, the defendant, obtained possession of the said machines were void. He traced his title in the answer through what he claims to be void instruments, hence the defendant disclaims any title or right of possession in himself. (c) Defendant at the trial specifically disclaimed any title to the leased machines. (d) As the defendant did not and does not claim the ownership or right of possession in the leased machines, and has specifically disclaimed any and all title in or to the machines, she cannot ask judgment either for their value or damages for their taking or detention. Cable v. Duke, 208 Mo. 557.

*Bond, Marshall & Bond* for respondent.

(1) There is no merit in the appellant's contention that because the machines were patented Ramlose could not use them without a license from the plaintiff, and therefore the jury could not assess any damages in favor of the defendant by reason of being deprived of the use of such patented machines. No such issue was raised by any pleadings in this case. In the second place, neither the trial court nor this court has any jurisdiction to pass upon the question whether the defendant Ramlose was using, or could use, the patented articles without a license from the patentee. The Federal court alone has jurisdiction to determine those matters. In the third place, the machines were taken away from the defendant by the plaintiff under the writ of replevin. This court has decided that the plaintiff had no right so to do and has ordered the *status quo* of the parties restored. Therefore, what

would be the consequences if the *status quo* were restored is a matter not to be decided in this case. The plaintiff damaged the defendant by unlawfully using the process of the law to take the machines out of the possession of the defendant, and it cannot now be heard to complain that the law restores the parties to the condition they were in at the time the plaintiff unlawfully began this action of replevin. That is all that is being done in this case, and that is what Secs. 4473 and 4474, R. S. 1899, provide shall be done in all cases where a plaintiff institutes a replevin suit, obtains possession of the property, and is afterwards adjudged not entitled to maintain the action. (2) The principal, and as we think the only question preserved by the plaintiff for review at this time by this court is the question whether the restoring of the *status quo* of the parties as it existed before the institution of this suit, is contrary to section 1 of the Fourteenth Amendment to the Federal Constitution, in that it denies the plaintiff the equal protection of the laws of Missouri, and in that it deprives the plaintiff of its property without due process of law, and in that it is repugnant to section 8 of article 1 of the Federal Constitution because it is an attempt on the part of this State to regulate commerce between the States. (a) The restoring of the *status quo* does not deprive plaintiff of its property without due process of law, because it leaves the parties exactly where they had put themselves without any action of the law whatever. The law did not take the plaintiff's property and place it in the hands of the defendant, but the defendant did that itself without authority of law and in the face of the express provisions of the laws of Missouri, and after having so done and being itself the first violator of the law, the plaintiff unlawfully used the process of the laws of Missouri to regain the possession of its property that it had voluntarily placed in the possession of the defendant. The action of this court, in directing the re-

storing of the *status quo*, simply undid what had been
unlawfully accomplished by an unlawful use of the
processes of the courts of this State by the plaintiff.
Only this, nothing more. It will be observed that the
plaintiff does not attack the constitutionality of the
laws of this State relating to foreign corporations. Its
attack is only upon the action of this court in ordering
the restoring of the *status quo* of the parties, and in
correcting the wrong committed by the plaintiff in un-
lawfully using the processes of the courts of this State.
Therefore, there is absolutely no merit in the conten-
tion of the plaintiff that the action of this court, or the
proceedings in this case at any stage, has any ten-
dency to deprive the plaintiff of its property without
due process of law. Plaintiff, however, refers to
Roeder v. Robertson, 202 Mo. 522, as authority upon
this branch of the case. That case does not so hold.
It is the aftermath of Ehrhardt v. Robertson, 78 Mo.
App. 404. That was a case wherein a foreign corpora-
tion had sold an engine and threshing machine to a
resident of Missouri without having complied with
the laws of this State relating to foreign corporations,
and had taken in exchange certain old machinery and
certain promissory notes for the difference. The notes
were not paid, and the foreign corporation assigned
them to Ehrhardt, who sued thereon, and it was held
that the plaintiff could not recover. Thereafter the
foreign corporation transferred to Roeder its right,
title and interest to the machinery sold to the defend-
ant as aforesaid, and Roeder brought an action for
trover and conversion against the defendant. The
seventh instruction asked by the plaintiff in that case
asked the court to declare that the foreign corporation
laws of Missouri were not confiscatory, and that the
State had no right to pass a law depriving a person or
corporation, who is a citizen of another State, of its
property without due process of law, and had no right
under the Constitution of this State and of the United

States to transfer the property of a private person or corporation of the State of New York to another person or corporation of this State without requiring the person or corporation who received said property to make compensation therefor. Thus attempting to raise the same question that the defendant seeks now to raise in this case (Roeder v. Robertson, 202 Mo. 531). Woodson, J., at pages 535, etc., states that the appellant attacked the validity of the statute on three grounds: first, because it deprived the foreign corporation of its property without due process of law; second, that it denied such corporation the same rights, immunities and privileges that are accorded to the citizens of this State; and third, that it denies to such corporation equal protection of the law. The fundamental principles there announced are undoubtedly correct. But so much of the opinion as undertakes to deal with the question of what would be the rights of a foreign corporation to recover goods sold, without refunding the benefits it had received under a void contract or lease, was not involved in that case, for the plaintiff did not offer to refund anything, and therefore that portion of the opinion ought not to be considered binding upon this court in this case. Nor has this plaintiff offered to refund anything it received under its contract. We respectfully submit that the constitutional objections were fully disposed of before such observations were made, and that they were not essential to the decision of that case. We believe that it would have been all-sufficient for the court to have said in that case, as we believe the court said in this case on former appeal by its judgment herein, that, neither the statutes of this State nor the decisions of the courts of this State, have any tendency to deprive the plaintiff of its property without due process of law, or deny to the plaintiff the equal protection of the law, but that whatever loss the plaintiff may suffer by reason of placing its property in the hands of the defendant, will result purely and

solely from the plaintiff's own act in placing its property in the hands of the defendant contrary to the provisions of the statutes prohibiting it from doing business in this State, without first complying with the laws of this State, and that the action of the court in refusing to aid the plaintiff in recovering its property thus voluntarily placed by it in the hands of the defendant does not in any manner deprive the plaintiff of its property without just compensation, or without due process of law, or deny to it the equal protection of the law. For the law did not take the plaintiff's property from it, and will not aid the plaintiff to recover property the plaintiff parted with voluntarily and in violation of the law. It is upon the same principle that the law will not aid a fraudulent grantor to recover property from his fraudulent grantee. [Downing v. Ringer, 7 Mo. 585.] It certainly cannot be the law that a party by the use of a writ of replevin can recover the property placed by him in the hands of the defendant, when its value could not have been recovered by an action of trover and conversion. (3) Neither the ruling of this court nor that of the trial court in any manner constitutes "an attempt on the part of the State of Missouri to regulate commerce between the States." Corporations are creatures of statutes. Domestic corporations only have such rights as the State chooses to confer upon them. Foreign corporations have no rights in a State, except such as the grace of the State accords to them. If a foreign corporation desires to do business in a State, it can only do so on such terms as the State prescribes. If those terms are not satisfactory to it, it need not do business in such a State. The statutes of this State regulating the doing of business in this State by a foreign corporation do not in any manner interfere with the powers of Congress to regulate commerce between the several States. Nor does the doing of business in any State constitute interstate commerce.

WOODSON, J.—This is a suit in replevin to recover the possession of several shoe manufacturing machines; and this is the second appeal of this cause to this court. The opinion disposing of the former appeal is reported in 210 Mo. 631.

After the cause was remanded, both parties appeared in the circuit court and announced ready for trial, and after the jury had been selected and duly impaneled, the court, prior to the introduction of any evidence and over the objection of the appellant, instructed the jury as follows:

"The court instructs the jury that their verdict must be for the defendant. The court further instructs the jury to ascertain and find from the evidence as follows:

"1. What portion of the property that was heretofore, on April 8, 1903, taken under the writ of replevin from the defendant, belonged absolutely to the defendant.

"2. The value of the property belonging to the defendant that was so taken.

"3. The damage suffered by the defendant for the taking and detention of such property from April 8, 1903, to this date.

"4. The damage suffered by the defendant from the 8th of April, 1903, to this date, by reason of the taking and detention of the plaintiff from the defendant of the machines that had been leased by the plaintiff to the defendant.

"5. The value of the machines leased by the plaintiff to the defendant.

"6. Whether or not the plaintiff has or has not in his possession the property that belonged to the defendant absolutely that was taken under the writ of replevin, and also of the machines that had been leased by the plaintiff to the defendant."

To the giving of which instruction the plaintiff objected and saved its exceptions, on the ground that it is

contrary to section 1 of the 14th Amendment to the Constitution of the United States, for the reason that it tends to deprive the plaintiff of its property without due process of law, and that it is further repugnant to said section of said amendment in that it denies to the plaintiff the equal protection of the laws of Missouri; and that it is contrary and repugnant to article 1, section 8, of the Constitution of the United States in that it is an attempt on the part of the State of Missouri to regulate commerce between States.

All of the testimony introduced at the first trial was preserved in the defendant's bill of exceptions and the record and they were offered in evidence at the second trial by the plaintiff under an agreement that such testimony could be so offered instead of placing each witness on the stand. The court excluded all testimony on the part of the plaintiff except such as tended to prove the value of the machines which the defendant contended her decedent actually owned, and also excluded all of the evidence on the part of the plaintiff tending to show that the machines were patented machines and could not, under section 4884 of the Revised Statutes of the United States, be used by the defendant's decedent without a license from the owner thereof, and hence were utterly useless to the defendant's decedent.

To which ruling of the court, the plaintiff duly excepted.

It will be unnecessary to restate what the evidence tended to show at the second trial, for the reason that Judge BURGESS, who wrote the former opinion, fully and fairly stated what it tended to prove at the former trial, and reference is made to it for a full statement of the case.

Counsel for plaintiff made the following objection to the introduction of evidence.

"The plaintiff objects to the introduction of any evidence upon the question of damages sustained by

the defendant or by the defendant's decedent, Christian E. Ramlose, for the reason that any assessment of damages, in this suit, would be a violation of section 1, 14th Amendment of the Constitution of the United States, in that such assessment of damages would deprive the plaintiff of its property without due process of law of the State of Missouri; and would also be a denial to plaintiff of the equal protection of the laws of the State of Missouri; and it would also be a violation of article 1, section 8, Constitution of the United States, in that the same would be a regulation of the commerce, by the State of Missouri, between the State of Massachusetts and the State of Missouri; the right of such regulation of commerce among the several states of the Union belonging alone to the Congress of the United States.''

The objections were overruled and exception saved.

The instruction, given at the opening of the case, was again given at the close of all the evidence; but was afterward modified by the court striking out the fifth clause of said instruction and by giving an instruction to the effect that the jury could assess no damages for the value of the leased machines. To all of which plaintiff objected and duly excepted.

Counsel for plaintiff then requested the court to give the instructions which had been given for the plaintiff at the former trial, which the court refused to do, and exceptions were duly saved.

The plaintiff also asked the following instructions, which the court refused to give; to which action of the court plaintiff duly excepted.

"13.   You are instructed that under the pleadings and the evidence you can assess no damages against the plaintiff.

"14.   The court instructs you that in this suit you cannot take into consideration the value of any machines which did not belong absolutely to Christian E. Ramlose, or in which he had no interest, or any dam-

ages defined by these instructions which may have accrued for the taking of any machines in which he had no interest, and you are further instructed that under the pleadings of the defendant, the said Christian E. Ramlose had no interest in the following machines.'' [Then follows a list of the machines leased to defendant.]

"15. You are instructed that if you believe from the evidence that the two National Heelers, Nos. 774 and 713, and the two Bussel Heel Trimmers, Nos. 702 and 194, were obsolete machines and not in use at the time this suit was instituted, then you cannot assess damages against the plaintiff for more than the actual value of the material in said machines.

"16. If you believe from the evidence that the Knurling Machine No. 101 and the Knife Grinding Machine No. 6142 were accessories of the Universal Double Clinch Machine No. 225, and that said double clinch machine was an impractical machine, and not fit for the use for which it was intended, and that Christian E. Ramlose did not use said machine in his business, then the value of said machine to Christian E. Ramlose was not in excess of one cent.

"17. You are instructed that Christian E. Ramlose had no right to use any of the machines involved in this suit, which were covered by letters patent of the United States, unless he had a license from the owner of said machines, or the owner's permission to use the same, and you are further instructed that without such license or permission such patented machines were of no value to the said Ramlose, and you cannot assess any damages against the plaintiff for any such patented machines.

"18. You are instructed that if you believe from the evidence that any of the machines mentioned in the evidence in this suit were patented machines and covered by letters patent, issued by the United States, and that Christian E. Ramlose had no license to use the

same from the owners of the said patented machines, then the said Ramlose had no right to use such patented machines and you will not assess any damages against the plaintiff for any of such patented machines.

"19. You are instructed that you cannot consider in your verdict what the value of the machines would be to the United Shoe Machinery Company, and you cannot consider what the value of the machines would be to a person having no right to use the same under the patents.

"20. You are instructed that under article 1, section 8, of the Constitution of the United States, the contract made in Boston, Massachusetts, in August, 1900, mentioned in the evidence, between the United Shoe Machinery Company of New Jersey and Christian E. Ramlose, for the leasing to the said Ramlose of some of the machines sued for and for the surrender of other machines also sued for, by the said Ramlose to the said United Shoe Machinery Company, was a valid contract and the fact that the leased machinery was to be used in Missouri did not render the contract void, because the said United Shoe Machinery Company of New Jersey had no license to do business in Missouri.

"21. You are instructed that under section 1 of the Fourteenth Amendment to the Constitution of the United States, any assessment of damages against the plaintiff in this suit would result in depriving it of its property by the State of Missouri, without due process of law, and to deprive it of equal protection of the laws of the State of Missouri and you cannot, therefore, assess any damages against it."

The court then, at the request of the defendant, repeated the instruction which it had given at the opening of the case and later modified it as stated above. It also gave the following instruction at the request of the plaintiff:

"22. You are instructed that you can assess no damages for the value of the leased machines."

The jury returned the following verdict:

"Now at this day come again the parties by their respective attorneys and also comes a jury, to-wit (naming them), twelve good and lawful men of the body of the county, who, being chosen, tried and sworn, upon their oath do say that:

"1. We, the jury, find for the defendant.

"2. We, the jury, find that on April 8th, 1903, the defendant was the absolute owner of the following machines: Two National Heelers and two Bussel Trimmers.

"3. We, the jury, find that the said property owned absolutely by the defendant was of the value of $11.65.

"4. We, the jury, find that the damages suffered' by the defendant from the 8th day of April, 1903, to this date, by reason of the taking and detention by the plaintiff of said property, owned absolutely by the defendant, amounted to $——.

"5. We, the jury, find that the damages by the defendant from the 8th day of April, 1903, to this date, by reason of being deprived of the possession and use of the machines that had been leased by plaintiff to defendant, amounts to $3,661.60.

"7. We, the jury, find that the plaintiff has the possession of the property that belonged to the defendant absolutely and also of the machines that had been leased by the plaintiff to the defendant.

"B. FRIEDMAN, Foreman."

Upon this verdict a judgment was duly entered to the effect that the plaintiff return to the defendant the two National Heelers and the two Bussel Trimmers or pay the defendant the assessed value thereof, to-wit, the sum of $11.65, at her election; and that the defendant recover from the plaintiff and its surety the sum of $3661.60, the damages assessed by the jury by rea-

son of the defendant being deprived of the possession and use of the leased machines from April 8, 1903, to May 15, 1908, and costs.

In due time the following motion for a new trial was filed (formal parts omitted):

"Now comes the plaintiff in the above entitled cause, and moves the court to set aside the verdict and the judgment therein rendered and grant a new trial for the following reasons:

"1st. Because the court erred in admitting illegal and improper evidence offered by the defendant against plaintiff's objection.

"2d. Because the court erred in excluding competent and legal evidence offered by the plaintiff.

"3d. Because the court erred in refusing legal and proper instructions offered by the plaintiff.

"4th. Because the court erred in granting illegal and improper instructions offered by the plaintiff.

"5th. Because the court erred in granting illegal and improper instructions of its own motion.

"6th. Because the instructions given by the court were in violation of section 1 of the 14th Amendment to the Constitution of the United States, in that they deprived the plaintiff of its property without due process of law.

"7th. Because the instructions given by the court were in violation of section 1 of the 14th Amendment to the Constitution of the United States, in that they denied to the plaintiff within the jurisdiction of the State of Missouri, the equal protection of the laws of the State of Missouri.

"8th. Because the instructions given by the court were in violation of article 1, section 8, of the Constitution of the United States, in that said instructions regulated the commerce between the State of Massachusetts and the State of Missouri, the right of such regulation of interstate commerce being vested alone in the Congress of the United States.

"9th. Because the verdict was against the law and the evidence.

"10th. Because the verdict was against the weight of the evidence.

"11th. Because the verdict was contrary to the instructions of the court.

"12th. Because the verdict was not supported by the evidence, and was for the defendant and not for the plaintiff.

"13th. Because the verdict was in violation of section 1 of the 14th Amendment to the Constitution of the United States in that it deprived the plaintiff of its property without due process of law.

"14th. Because the verdict was in violation of section 1 of the 14th Amendment to the Constitution of the United States, in that it denied to the plaintiff within the jurisdiction of the State of Missouri, the equal protection of the laws of the State of Missouri.

"15th. Because the verdict is in violation of section 8, article 1, of the Constitution of the United States, in that by it the State of Missouri regulated commerce between the State of Massachusetts and the State of Missouri, the right of such interstate commerce being vested alone in the Congress of the United States.

"16th. Because the form of the verdict was not in conformity with the laws of the State of Missouri.

"17th. Because the court gave an instruction before the evidence was submitted to the jury, in contravention of the laws of the State of Missouri.

"18th. Because the court refused to permit the plaintiff to offer its evidence first, and permitted the defendant to have the opening and close, both in the offer of proof and in the argument to the jury.

"19th. Because the form of the verdict given by the court to the jury assumed that the defendant had suffered damages by reason of being deprived of the possession and use of the machines.

"20th. Because the damages were assessed up to the date of this trial, whereas they should only have been assessed up to the date of the former trial, to-wit, September 15th to 17th, 1904."

This motion was overruled, exceptions saved, and plaintiff duly appealed the cause to this court.

I. The first proposition presented for determination is the insistence of counsel for respondent to the effect that since the cause upon the former appeal was reversed, with directions, the circuit court had nothing to do but to proceed and try the case in pursuance to those directions; and having done so, the cause is *res judicata,* and, consequently, there is nothing before the court for determination, except to affirm the judgment.

Ordinarily that is true, but that is not a hard-and-fast rule; it has its well-known qualifications and exceptions.

As was held, at an early date, by this court, in the case of Hamilton v. Marks, 63 Mo. 167, where a cause is reversed and retried in conformity to the principles announced by the appellate court, cogent reasons must exist in order to induce a re-examination of the former rulings. But where subsequent decisions of the upper court, although not purporting to overrule or notice the particular case, are inconsistent with it and the questions involved are of great importance to the community, the usual practice will be departed from. This rule is restated and affirmed by this court, in many subsequent decisions, the last of which I have been able to find is that of Citizens National Bank v. Donnell, 195 Mo. l. c. 571.

That rule, however, is not, strictly speaking, controlling in the case at bar, for the reason that the questions chiefly relied upon on this appeal for a reversal of the judgment are Federal questions, and were not presented to the court for determination on the

former appeal. In fact, appellant had no opportunity to present them until the circuit court gave, at the beginning of the second trial, the instruction framing the issues to be determined by the jury, as directed by this court.

Under the Constitution of the United States, unquestionably appellant had the right to interpose those Federal questions when that instruction was given. So under either theory before suggested, we are of the opinion that the questions presented should be reconsidered.

II.   By reading this motion in connection with the record presented to this court, it will be seen that appellant relied, among other things, for a reversal of this judgment, upon the facts that the lease of the machinery mentioned in evidence is valid, and that appellant was duly authorized to do business in this State, as provided for by sections 1024 and 1026, Revised Statutes 1899.   Both these questions were presented to this court upon the former appeal, and after a full and careful consideration, they were decided adversely to the appellant.  Notwithstanding that fact, we have, at the earnest solicitation of the counsel for appellant, re-examined both questions, and are fully satisfied the results reached there were proper.  We, therefore, decline to interfere with the judgment for either of said reasons.

III.   In addition to the foregoing propositions, counsel for appellant present upon this appeal the Federal questions before mentioned, which were not, as before stated, presented or passed upon when the case was here upon the previous appeal.

It is contended that, even though it be conceded, as the court has held, that the lease in question is void, still appellant is entitled to recover the possession of the machines it leased to the respondent, for the reason that it is conceded that appellant is the owner of them;

and if the lease is void, then it has both title to, and as an incident thereto, it has the right to the possession of them. Under that state of facts, counsel for appellant contend that a denial of its right to recover the possession of the machines would deprive it of its property without due process of law; denies it the same rights, immunities and privileges that are accorded to the citizens of this State; and denies to it the equal protection of the law; all in violation of the Constitution of the United States.

If the contract of lease in question is absolutely null and void, as contended for by counsel for respondent, then no right to the use of the twenty-six machines was conveyed or passed by virtue thereof from the appellant to the respondent. Under such circumstances the title remained in the former just as completely as if the lease had never been executed, and consequently respondent has no interest in them or to their use. This is self-evident, and was so held by this court in a number of cases. Those identical Federal questions were presented to Division One of this court in the case of Roeder v. Robertson, 202 Mo. 522, and on page 535, in discussing them, the court used this language:

"Appellant asks for a reversal of the judgment because the act which prohibits foreign corporations from doing business in this State until they comply with the provisions thereof is, 'in so far as it seeks to make contracts so made with corporations of other States void, before they have complied with the requirements of said act, unconstitutional, because such act seeks to take from such foreign corporations, or nonresident citizens, its or his property without due process of law, and denies to such foreign citizen the same rights, immunities and privileges that are accorded to the citizens of this State, and because it denies to such foreign corporation or citizen the equal protection of the law.'

231 Sup.—34

"It will be seen that counsel for appellant assails the validity of the act upon three separate and distinct grounds: First, because it seeks to deprive the foreign corporation of its property without due process of law; second, that it denies such corporation the same rights, immunities and privileges that are accorded to the citizens of this State; and, third, it denies to such corporation equal protection of the law.

"The learned counsel, it seems to us, wholly misapprehends the meaning and scope of the act. The act is prohibitive in its operation. It seeks to prevent foreign corporations from doing business in this State until they have complied with the provisions of the act by filing a copy of their charter or articles of incorporation with the Secretary of State and by appointing an agent in this State to represent them. If such corporations, in violation of this act, do business in this State, all such transactions are, by the courts, declared null and void, and all contracts made by them with citizens of this State for the sale of goods, wares and merchandise are nullities, and the title to the property sought to be transferred thereby does not pass to and vest in the vendee, but remains in the vendor, the same as if the pretended contract had not been executed.

"It is therefore clearly seen that the act does not violate the constitutional provision which prevents the taking of property without due process of law, because the act does not take the property of a foreign corporation from it, nor does it give it to another, but lets the title thereof remain in and abide with the corporation; and if the corporation had parted with the possession of its property, under the void contract, and is unable to recover the possession without litigation, then the doors of the courts of this State are open to it, and it stands before the law upon precisely the same footing that residents of this State do—no better, nor no worse. We are unable to see in what way the act in question denies to such corporations the same rights,

immunities and privileges that are accorded by law to the citizens of this State, or how it deprives them of the equal protection of the law. . . .

"What has been stated in paragraph two of this opinion also answers, in the negative, the contention of appellant that the judgment in this case 'takes private property for private use.' Neither the act in question nor the judgment of the court takes or disturbs the title of the property. The title remains just where A. W. Stevens & Son placed it, subject to the equities created against it by the conduct and action of the parties at the time of the pretended sale of the property to respondents."

The same language is quoted, with approval, by the Court in Banc in the case of Sparks v. Jasper County, 213 Mo. 218. And these cases are cited with approval and the same principle is announced and upheld in the case of Bank v. Lyons, 220 Mo. 538; and again in Seaman v. Cap-Au-Gris Levee District, 219 Mo. 1—the former having been decided by the Court in Banc, and the latter by Division One of this court.

We therefore hold that no Federal question is involved in this case (except as will be presently stated), for the reason that the lease in question was absolutely null and void and, consequently, conveyed no right, title or interest in or to the machines mentioned therein; and said statutes did not deprive appellant of his property in any sense of the term.

IV. Counsel for the respondent contend that notwithstanding the fact that the lease mentioned was void, and passed no right or interest in or to the machines to respondent, still appellant is not entitled to a recovery in this case, for the reason that since the lease was made in violation of sections 1024 and 1026, the courts will not aid appellant in its efforts to recover the machines, the possession of which was parted with, under and in pursuance to the terms of said void lease. For that reason it is insisted that the court

leave the property where the parties themselves have placed it. In support of this contention counsel for respondent cite and rely upon the cases of Downing v. Ringer, 7 Mo. 585; Mason v. Pitt, 21 Mo. 392; Zinc and Lead Co. v. Zinc Mining Co., 221 Mo. 7.

This contention, in our opinion, is unsound. That rule never applies except in those cases where the maintenance of the suit would necessarily result in the courts giving force and effect to the void contract, or where the contract is tainted with fraud and immorality. This identical question, in the same kind of a case, was decided against the contention of respondent in the case of Roeder v. Robertson, supra. That case announces no new rule of action. It is as old as our jurisprudence, and has been so held by this court in numerous cases, both prior and subsequent thereto. In discussing that question in the case just mentioned, the court used this language:

"Respondents contend that where a contract is illegal and void because contrary to the policy and laws of the State, the courts will not only refuse to aid those seeking to enforce such illegal contract, but will not lend their assistance to those attempting to escape from it, and cite in support of that contention the cases of Downing v. Ringer, 7 Mo. 585, and Mason v. Pitt, 21 Mo. 392. The first case mentioned was a suit on a promissory note, given as part payment of the purchase price of a lot of ground in the town of Philadelphia, Marion county, Missouri. The defense interposed was a statute of 1835, which imposed a penalty upon the proprietor of a town, village or of an addition thereto for selling a lot therein before recording the plat or map thereof. The court held that the sale was in violation of the statute, and that the vendor could not recover the purchase money, because the court would not aid him in doing that which was prohibited by law.

"The court in the latter case, in commenting upon the former, stated: 'If a vendee of a lot in such a town,

knowing that the plat is unrecorded when he purchased, should bring an action to enforce a specific performance of the contract of sale, he might be met with the statute.'

"We are of the opinion that both of these cases were correctly decided, upon both principle and authority, because if the court had permitted a recovery in either case, it would have necessarily given full force and effect to a contract which was forbidden to be made by the statute. But we are unable to see the application of the principle involved in those cases to the facts of the case at bar. Here there is no attempt to enforce the provisions of the illegal and void contract between A. W. Stevens & Son and the respondents, but, upon the contrary, all the parties to this suit, as well as Stevens & Son, concede the illegality of that contract, and that by reason thereof the title to the property never passed from the corporation nor vested in the respondents. That being true, the appellant contends that he had a perfect legal right to go to New York and purchase the property in controversy from the owner, A. W. Stevens & Son. This contract of purchase, not having been made in this State, is free from the provisions of the act of the Legislature above mentioned. That act is intended to prohibit foreign corporations from doing business and making contracts in this State before they comply with the provisions of our statutes. It was not the intention of the Legislature to prohibit the enforcement of valid contracts made by foreign corporations in their own States with citizens of this State. There is nothing in our laws which denies the right of such corporations to enforce valid contracts, whether made in this State or not. It must therefore follow that when appellant in New York purchased the undisputed title of A. W. Stevens & Son to the property in controversy, the doors of our courts are open to him and will aid him in the enforcement of his legal rights.

"This court in the case of Kelerher v. Henderson, 203 Mo. 498, in discussing this same question, used the following language: 'The law does not impress upon the subject-matter of the contract its stamp of condemnation, but upon the contract itself. Unless the plaintiffs' contract, by which they seek to enforce their right, is infected with champerty, we see no reason why this suit may not be maintained, though such a contract exists between the defendant and the bondholders. It is time enough to turn a party out of court when he asks the aid of a court to enforce such a contract.' "

In the case of Sparks v. Jasper County, 213 Mo., at page 242, this court, in discussing this question, said:

"But that is not the question involved in this case. Here the plaintiff is not asking this court to enforce these alleged illegal contracts. They were years ago fully performed on both sides; and the defendant is now here by way of counterclaim in the nature of a cross-bill, seeking to recover back the money she paid for those bridges without an offer to return them to the plaintiff. This she cannot do without she first returns or offers to return them to him; and the reason therefor is this. If the contracts were void, then the title to the bridges never passed thereby from plaintiff to the defendant and became her property; but they remained his property the same as though the contracts had never been entered into. That being true, then when the county acquired the possession of the bridges under those void, yet colorable contracts, she was morally bound to pay for them, as she did; and conceding, as before stated, without deciding it, that after accepting the bridges and paying for them, she had the right to repudiate the contracts and sue for the recovery of the money paid by her for them, she would be morally bound, and from that springs the legal liability to return the bridges to plaintiff before she would be permitted to recover back the contract price so paid. This same prin-

ciple underlies the case of Roeder v. Robertson, 202 Mo. 522.'' Then follows the quotation before made from Roeder v. Robertson, supra, which is unnecessary to be repeated here.

In the case of Kelerher v. Henderson, 203 Mo. 498, the plaintiff sued defendant on a contract for a portion of the fees the defendant had collected from his client under another contract, which was clearly champertous. In passing upon that case, this court said: ''Counsel for defendant in his oral argument before this court contended that even though the contract sued on was not champertous, yet as it obligated defendant to pay fees which were earned and collected under and in pursuance of a contract which was clearly champertous, the courts should not lend their aid to the enforcement of that obligation. To that proposition we cannot assent. In order to reach that conclusion we would be compelled to hold that the fees so collected are tainted with champerty and illegality. The law does not impress upon the subject-matter of the contract its stamp of condemnation, but upon the contract itself. Unless the plaintiff's contract, by which they seek to enforce their right, is infected with champerty, we see no reason why this suit may not be maintained, though such a contract exists between the defendant and the bondholders. It is time enough to turn a party out of court when he asks the aid of the court to enforce such a contract. [Euneau v. Rieger, 105 Mo. 682; Roselle v. Beckemeir, 134 Mo. 380.]''

In the case of Vette v. Geist, 155 Mo. 27, the plaintiff loaned the defendant a certain sum of money, and the latter agreed to pay usurious interest, and secured the same by chattel mortgage on personal property. Section 2 of an act, approved April 21, 1891 (Laws 1891, p. 170), declared all such mortgages void, etc. The defendant failed to pay the money when due, and plaintiff sued on the note. Defendant set up in his answer the fact of usury and the execution of the chattel

mortgage to secure the same, and asked the court to deny the prayer of the petition, for the reason that the note and mortgage constituted but one transaction and was in violation of said act, and was void for that reason; but the court refused to do so. In so holding, the court, speaking through BURGESS, J., on page 33, used this language: "But we know of no reason or rule of law which would authorize a defendant in a case like the one in hand to avail himself of its provisions. In the first place this is not an action for the enforcement of a lien upon personal property pledged or mortgaged to secure an indebtedness."

And in the case of Union Nat. Bank v. Lyons, 220 Mo. 538, l. c. 570, this court, In Banc, in disposing of this question, used this language: "We have cited and quoted somewhat extensively from a few of the many cases found in this country and in England bearing upon the question of the right of a party to sue for and recover money paid or loaned to another upon a void contract; and the rule announced by all of them seems to be that where a void contract has been entered into, and that by means thereof money or other valuable thing has been parted with by one party thereto, and received and accepted by the other party thereto, and where the latter repudiates the contract and refuses to return the money or such other valuable thing, then the law will imply an agreement on the part of the recipient to return the same to the other party; and if he fails to do so, then the injured party may maintain an appropriate action against the offending party for the recovery of the money, or for the value of the thing so retained. That implied promise or agreement springs from the general moral obligation resting upon all persons and corporations to do equity and justice in all such transactions. To hold otherwise would be sanctioning the rankest injustice, and thereby take the the money or property from one party and give it to another without compensation, and against the in-

tention of both parties, as manifested by the void contract.   Of course this rule should not and does not apply where its enforcement would violate some statute or other principle of law which prohibits the doing of the very thing the enforcement of the rule would accomplish.   The courts have improvised this rule by which right and justice may be worked out to the parties thereto, and not for the purpose of enabling them to avoid the law, and do indirectly that which the law will not permit them to do directly.   We have just been called upon to consider and pass upon the latter question in the case of Seaman v. Cap-Au-Gris Levee District; the opinion in which will be handed down with this.   [219 Mo. 1.]''

From these cases it will be seen that this court has uniformly lent its aid to the protection of the rights of parties growing out of illegal and void contracts, wherever it could do so without giving force and effect to the illegal contract itself.

In the case at bar, the court clearly would not give force or effect to the void leases in question by permitting appellant to recover the possession of the twenty-six machines which it parted with under said void lease.

There is nothing stated by this court in any of these cases which is in conflict with what is said in the cases of Downing v. Ringer, 7 Mo. 585, or Mason v. Pitt, 21 Mo. 392, before mentioned and relied upon by counsel for respondent.   And as to the case of Zinc and Lead Co. v. Zinc Mining Co., supra, it is sufficient to state that the record in that case shows that the said suit was based upon a contract made by a foreign corporation which had not procured a license to transact business in this State as required by the statute therein mentioned.   Upon that showing this court held said contract to be not only void, but also properly held that the doors of the courts of this State were closed to plaintiff when based upon such causes of action, for the reason that permitting such an action to be

maintained would not only violate the express words of the statute but would also give full force and effect to the void contract, to neither of which propositions should our courts lend their assistance. So in the case at bar, for the same reasons, we have held on this and upon the former appeal that the appellant was not entitled to recover the property in question upon the strength of the leases introduced in evidence; but that was not the only theory upon which the case was tried the second time. This being a suit in replevin clearly, appellant, according to the foregoing adjudications, had the perfect right to pick up the gauntlet thrown down by the respondent, that is, to accept his contention that said leases are void, and are of no force or effect, and in return insist, conceding that contention to be true (as this court has repeatedly held in this and in other cases), that neither the title to nor the right to the possession of the property in question ever passed to or became vested in the respondent, but upon the contrary that it remained with the United Shoe Machinery Company of New Jersey, until the month of August, 1900, when the latter sold and transferred the same to the appellant. That title and the right to possession thereof so acquired by the latter from the former was sufficient to entitle appellant to recover the possession of the property from the respondent, who confessedly has no right, title or interest in or to any of said property, except the claim under and by virtue of said void leases. The distinction between the class of cases relied upon by appellant and those relied upon by respondent is clearly stated in the case of Seaman v. Cap-Au-Gris Levee District, supra.

In the case at bar there is nothing in public policy or contained in our statutes which prohibits a foreign corporation from suing in the courts of this State to recover the possession of property acquired and held by a citizen of this State under and by virtue of a void contract. But concede that there was such a statute,

then its validity might be very seriously questioned as violating that provision of the Constitution of the United States which guarantees to citizens of other States the equal protection of the laws of this State. [International Textbook Co. v. Pigg, 217 U. S. 91.]

It has been suggested that if appellant is permitted to waive the leases and sue in replevin or in trover for the machines transferred by the leases, then the statute requiring foreign corporations to take out a license to do business in this State can be nullified by them, by their leasing or selling goods in this State, without a license, and when the contract or lease is breached by the lessee or vendee, the lessor or vendor can waive the lease or contract of sale and sue in replevin or trover for the possession of the goods, or for their value, as the case might be. There are two complete answers to that suggestion. First, the statute in question does not prohibit foreign corporations from suing in the courts of this State, except where they assert rights which are violative of the laws of this State. If a foreign corporation has a perfect right to action under the laws of the country, then clearly there is nothing in the statutes of this State which would prevent it from suing and enforcing its rights in our courts. For instance, suppose a business corporation of Illinois, doing business in Chicago, should sell to John Jones of this State a bill of dry goods, in that city, and Jones should return home and refuse to pay for the goods, would or could it be seriously contended that said foreign corporation could not sue for the recovery of the purchase money in the courts of this State, without first taking out a license to do business herein? I think not. That is not the law nor the meaning of the statute. [International Textbook Co. v. Gillespie, 229 Mo. 397.] The enforcement of a contract in the courts of this State after it has been entered into, is not doing business herein. If this was not the law, no contract made by any foreign corporation could

be enforced in our courts without complying with said statute and the comity between States would thereby be nullified. [13 Am. and Eng. Ency. Law (2 Ed.), 869; Christian v. American Co., 89 Ala. 198; Texas Co. v. Worsham, 76 Tex. 556; Conn. Ins. Co. v. Way, 62 N. H. 622; Nat. L. & T. Co. v. Gifford, 90 Minn. 358; MacMillan Co. v. Stewart, 69 N. J. L. 212; Miller v. Goodman, 91 Tex. 41; Milan M. Co. v. Gorten, 93 Tenn. 590; Beale on Foreign Corporations, sec. 209.] But even if that was the meaning of the statute as before stated, it might be subject to the criticism that it was in violation of both the State and the Federal Constitutions. And there is no distinction in principle between the last theory on which the case at bar was tried, and the case before supposed. Both would have perfect causes of action under the laws of this State and their enforcement in the courts of this State would do no violence to the statute in question.

The second answer to the objection before mentioned is, self-interest of foreign corporations would prevent them from conducting business along the lines suggested. They, like all other business persons, are in business for the money that there is in it, and do business upon a money basis; and not upon the theory that if the goods are not paid for when due, they will sue for the possession of the old worn-out or secondhand goods or in trover for their value. Both of these forms of action involve difficult and expensive litigation, much more so than a simple suit on a contract for goods sold and delivered.

The lease in question is not *malum in se,* but is *malum prohibitum,* and so long as the appellant is not seeking to enforce the lease, there is nothing, as before stated, in the laws or policy of this State which will prevent the courts from lending their aid to the appellant in its efforts to recover its property, which, confessedly, respondent has no legal or equitable right or interest in or to. This court has so expressly held in

the case of Roeder v. Robertson, supra; Bank v. Lyons.
supra; Sparks v. Jasper County, supra.

We, therefore, hold that appellant may maintain
this action, and, consequently, that it has not been de-
prived of any of its said constitutional rights.

V. It is next insisted by counsel for appellant that
respondent was not entitled to recover any damages
whatever for the taking and detention of the machines
from him, for the reason, first, that they did not be-
long to him, and he, therefore, had no right to use them;
and, second, because they were covered by letters
patent from the United States and could not be used
by respondent without authority to do so granted by
appellant; and having no right to use them, they were
worthless in the hands of respondent.

We have previously held that respondent had no
legal or equitable right or interest in or to the ma-
chines, and, consequently, he had no right to use them.
We, therefore, decide the first insistence in favor of
appellant.

As to the second, the evidence offered and excluded
shows the machines were covered by letters patent, and
under section 4884, Revised Statutes of the United
States, no one could use these machines without per-
mission from the owner. The only authority attempted
to be shown by which respondent claims the right to
the use of these machines is the lease in question; and
counsel for respondent concedes, as this court has
uniformly held, that said lease is absolutely void. That
being true, then, clearly, respondent has no authority
whatever from appellant to use the machines; and,
consequently, said section 4884, Revised Statutes of the
United States, is applicable. The Supreme Court of
the United States has repeatedly announced that doc-
trine; and has gone so far as to hold that even the
United States Government cannot use a patented ar-
ticle without authority from the owner to do so; and
if it does so without such authority, it is liable to the

owner for such use. [United States v. Palmer, 128 U. S. 262; Hollister v. Benedict, 113 U. S. 59.]

We, therefore, hold that respondent was not entitled to use said machines and could not be damaged by being deprived of their use, provided, of course, they were patented as appellant offered to show.

The court, therefore, erred in excluding said evidence and in refusing instructions numbered 17 and 18, asked by appellant.

VI. This brings us to the consideration of the contract as it affects the four machines respondent attempted to sell to the appellant, namely, the two National Heelers, numbered 774 and 713, and the two Bussel Heel Trimmers numbered 702 and 197.

It is conceded, or rather not disputed, that this contract of sale and the lease before mentioned constituted but one entire transaction. Those machines constituted a part of the consideration upon which the lease was based; and when it failed, this contract of sale necessarily failed with it, as they were inter-dependent.

We, therefore, hold that said contract of sale is invalid, and that appellant acquired no right, title or interest in or to any of said four machines, and has no right to their use or possession.

The judgment is reversed and the cause remanded for a new trial. All concur, except *Graves, J.*

Upon the dissent of one of the judges to the foregoing opinion delivered in Division, this cause was transferred to Court in Banc; and, after full argument and due consideration, the opinion of WOODSON, J., delivered in Division, is duly adopted by the court as the opinion of the Court in Banc. All concur, except *Graves, J.,* who dissents.

DISSENTING OPINION.

GRAVES, J.—There is much in Judge Woodson's opinion to which I agree, as to pure equities between parties. First, when the defendant urges a void lease, or things which show a void lease (and I think the lease is void in this case), he urges too much for nice equity in a replevin suit. Under present statutes, we in a sense adjust equities in replevin suits. I can hardly see how he can be hurt or damaged, if his right of possession is destroyed, and this is conceded by urging the invalidity of the lease. But beyond this is the further question of plaintiff's right to be in a Missouri court at all. In the original case, United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, we held, and I think properly held, that such company was in this State doing business when this lease was made, and without license; that it had an office here, and that the contracts were to be performed here. We also properly held that the transferee of those leases took no greater rights.

We have also persistently held that contracts made in violation of our statutes would not be enforced. This Judge Woodson concedes. My trouble with this case lies in a small compass, and such may be stated best by illustration, thus: Suppose a foreign corporation refuses to qualify under our law; suppose further, that notwithstanding this fact, it sells goods to a merchant in Missouri; suppose further, that the contract of sale is void, as the opinion concedes, and the seller ignores the void contract, and sues for the value of his goods by way of an action for conversion; under the present opinion this action in my opinion could be maintained. To this I do not agree. The State has absolute authority over foreign corporations, and with such power can say when, and when not, they shall come into the State, and can further say when, and when not, the courts, like other departments of government, shall

be open to them. If the State can close one department of the government to them it can close another. The Federal constitutional inhibition applies to all departments, the executive and legislative as well as the judicial. This question has been often determined. The purpose of the statute in question was to close the doors of our courts to foreign corporations, until such time as they complied with the law. The same kind of a preclusion is made by other statutes with reference to other branches of the State government. Each branch of the State government is under the same ban of the Federal Constitution.

With the views I have of the question, it appears that the present opinion would permit a foreign corporation, without State license, to contract a bill of goods, and deliver them, and then later sue for conversion. If this be true, our statute is a nullity. If this be true no foreign corporation need take out license, but can make void contracts, and yet collect the value of the things parted with under the void contracts by an action in conversion. What can be awarded in replevin, where property is withheld, can certainly be recovered in conversion. Indeed conversion does not have to depend even on that ground. This is opening the doors of our courts in express opposition to a State policy, and in express opposition to a statute which says that to such parties the courts shall be closed. It is simply permitting a thing to be done by indirection which cannot be done by direct act. It says your contracts are invalid, but go on and make them and our courts will see that you get full value for your property in an action for conversion.

This I take to be the force of the majority opinion, and for these reasons, I dissent.